*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS, *et al.*, | Civil Action No. 11-cv-04585 (FLW) |
| Plaintiffs, | |
| vs. | **OPINION** |
| RAC ATLANTIC CITY HOLDINGS, LLC; RESORTS INTERNATIONAL HOTEL, INC.; and DGMB CASINO, LLC, | |
| Defendants. | |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, *et al.*, | Civil Action No. 11-cv-03932 (FLW) |
| Plaintiffs, | |
| vs. | |
| RAC ATLANTIC CITY HOLDINGS, LLC, AND RESORTS INTERNATIONAL HOTEL, INC., | |
| Defendants. | |

**WOLFSON, United States District Judge:**

Plaintiffs, New Jersey Regional Council of Carpenters (the "Council") and International Union of Operating Engineers ("IUOE"), represent certain employees at Resorts International Hotel ("RIH"), a casino and hotel located in Atlantic City, New Jersey. On July 7 and August 4, 2011, respectively, the IUOE and its welfare, pension, apprentice training, and annuity funds and

1

the Council and its welfare, pension, apprentice training, and annuity funds (collectively, "Plaintiffs")[1] filed separate Complaints against Defendants RIH and RAC Atlantic City Holdings, LLC ("RAC") (collectively, "Defendants").  Both Complaints allege that Defendants breached the terms of the parties' respective collective bargaining agreements and violated the Employment Retirement Income Security Act ("ERISA") §§ 502(a)(3) and 515, 29 U.S.C. §§ 1132, 1145, the Labor Management Relations Act § 301, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 9.[2]  Specifically, the gravamen of Plaintiffs' Complaints is that Defendants failed to pay unit employees' contractual vacation time, to make contractually required contributions to each unions' respective funds, and to implement arbitration awards.  In addition, the Council separately alleges that Defendants failed to pay the withdrawal liability due to the employees' pension funds under § 4201 of ERISA, 29 U.S.C. § 1381(a).

---

[1] "Plaintiffs" refers collectively to all plaintiffs in Civil Action No. 11-4585, as well as Civil Action No. 11-3932, which include the following entities: New Jersey Regional Council of Carpenters; New Jersey Carpenters Welfare Fund and the Trustees Thereof; New Jersey Carpenters Pension Fund and the Trustee Thereof; New Jersey Carpenters Apprentice Training and Educational Fund and the Trustees Thereof; New Jersey Carpenters Annuity Fund and the Trustee Thereof; International Union of Operating Engineers, Local 68, AFL-CIO; International Union of Operating Engineers, Local 68 Welfare Fund and the Trustees Therefor; International Union of Operating Engineers, Local 68 Pension Fund and the Trustees Thereof; International Union of Operating Engineers, Local 68 Apprentice Training Fund and the Trustees Thereof; and International Union of Operating Engineers, Local 68 Annuity Fund and the Trustees Thereof.

[2] Curiously, Plaintiffs previously filed similar complaints that included applications for temporary restraint in the district court, Camden vicinage.  *See* Civil Action No. 1:10-cv-5996 (JBS)(JS) and Civil Action No. 1:10-cv-6072 (JBS)(JS).  The court there denied the applications, finding, *inter alia*, that its jurisdiction over RAC under § 301 of the Labor Management Act was doubtful because RAC was not a party to the collective bargaining agreements.  This issue is not before this Court; however, the Court notes that after RAC filed Motions to Dismiss and notified Plaintiffs of its intention to move for Rule 11 sanctions in the Camden matters, Plaintiffs voluntarily dismissed the complaints there on April 1, 2011.  Four months later, Plaintiffs filed these actions – which are similar in substance – in this Court.

In the instant matter, Defendant RAC moves to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5). RAC maintains that it is no longer a limited liability company because it terminated its legal existence when it filed a Certificate of Cancellation in New Jersey. As such, RAC argues that as a defunct company, service in this case is an impossibility and Plaintiffs' Summonses should be voided. In response, Plaintiffs allege that, when viewing the conduct of Defendants in the totality, Defendants intended to evade their pension liabilities by selling RIH's property without any of its liabilities, thereby depriving RIH of the necessary capital to satisfy these liabilities, quickly paying out the sale proceeds, and then immediately filing a Certificate of Cancellation; this type of conduct violates § 4212(c) of ERISA, and thus, by operation of the ERISA statute, the Court should disregard the cancellation. Considering the issues raise by the parties in this motion, although the motion to dismiss concerns the sufficiency of process and service, the question before the Court is whether, pursuant to ERISA, RAC is a proper party in this case. For the reasons set forth herein, RAC's Motion is granted and Plaintiffs' claims against RAC are dismissed without prejudice. However, Plaintiffs shall have leave to amend their Complaints within twenty days from the date of the Order accompanying this Opinion.

**I. Background**

In addressing RAC's Motion to Dismiss, this Court must accept as true the allegations contained in the Complaints. See *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996). Thus, the facts recited herein are taken from the Complaints and do not represent this Court's factual findings.

**A. Ownership of Resorts**

RIH owned Resorts from April 25, 2001 to December 16, 2009. Compl., ¶¶ 11-12.[3] RIH began defaulting on its financial obligations in or about November 2008. *Id.* at ¶¶ 13-14. Thereafter, RIH executed a deed-in-lieu of foreclosure and transferred fee title to all of the real property on which Resorts is located, as well as related improvements and other specified assets relating to Resorts, to a newly formed entity, RAC. *Id.* at ¶ 15.

As part of the deed-in-lieu transaction, RIH and RAC entered into a Management Agreement under which RAC owned, and RIH managed, Resorts. *Id.* at ¶17. The Management Agreement provided that all employees at Resorts would remain the employees of RIH, but that RAC retained control and/or approval power over the employee manual, employee compensation, certain hiring decisions, and any employment agreements or collective bargaining agreements. *Id.* at ¶ 24, 26-31.

Following further financial difficulties for RIH, RAC entered into an asset purchase agreement with Gomes Gaming, Inc. on or about August 17, 2010. Council Compl., ¶ 37; IUOE Compl., ¶ 38. The agreement was subsequently assigned to DGMB Casino ("DGMB"). Council Compl., ¶ 38; IUOE Compl., ¶ 39. Under this agreement, DGMB acquired RAC's assets in RIH, but did not acquire any liabilities. Council Compl., ¶ 40; IUOE Compl., ¶ 41. In mid-November 2010, DGMB and RAC agreed to close on December 6, 2010, and began development of a winding down plan, which included the lay off of all RIH employees. Council Compl., ¶ 39, 41;

---

[3] The Complaints are virtually identical. Unless specified, the cited paragraphs correspond to both Complaints.

IUOE Compl., ¶ 40, 42. RAC and DGMB closed on the asset purchase agreement on December 7, 2010. Council Compl., ¶ 42; IUOE Compl., ¶ 43.

Although not pled in the Complaints, it is undisputed by the parties that on December 14, 2010, pursuant to section 14 of the New Jersey Limited Liability Company Act (N.J.S.A. 42:2B-1, et seq.), RAC filed a Certificate of Cancellation with the New Jersey Department of Treasury, Division of Revenue, which terminated its legal existence.[5] *See* Certificate of Cancellation dated December 14, 2010.

### B. Terms and Obligations Under the Collective Bargaining Agreements

The Council and RIH were parties to a collective bargaining agreement that was effective through April 30, 2011. Council Compl., ¶ 32-33. IUOE and RIH were parties to two collective bargaining agreements—the maintenance workers agreement was effective through April 30, 2011, and the entertainment workers agreement was effective through June 30, 2011. IUOE Compl., ¶ 32-33. All the agreements obligated RIH to contribute to the welfare, pension, apprentice training, and annuity funds of each unit on behalf of the unit employees. Compl., ¶ 34. Article VII of each agreement allowed unit employees to earn and accrue vacation time and provided compensation

---

[5] In deciding a motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). "[A] court may consider an undisputedly [*8] authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). Here, because the parties do dispute the authenticity of the Certification of Cancellation, a public document, the Court will consider this document on this motion.

for accrued vacation time in the event of a lay off. *Id.* at ¶ 35. Additionally, the IUOE agreements required RIH to deduct dues from the accrued vacation time payment. IUOE Compl., ¶ 37. In accordance with the collective bargaining agreements, according to Plaintiffs, the layoff of employees following the December 7 closing triggered RIH's obligation to pay employees for accrued vacation time. Council Compl., ¶ 37, 43; IUOE Compl., ¶ 38, 44. RIH allegedly failed to meet any of the above contractual obligations. Council Compl., ¶ 45-46; IUOE Compl., ¶ 45-47.

The unions demanded RIH remedy the violations. Council Compl., ¶ 51; IUOE Compl., ¶ 49. After it failed to do so, the unions initiated their contractual arbitration procedures. Council Compl., ¶ 51; IUOE Compl., ¶ 49. On March 22 and May 12, 2011, an arbitrator conducted evidentiary hearings on the matters. Council Compl., ¶ 52; IUOE Compl., ¶ 50. On April 12 and May 23, 2011, the arbitrator issued awards in favor of each union and ordered the relief sought. Council Compl., ¶ 55; IUOE Compl., ¶ 53. Thereafter, the unions demanded RIH comply with the arbitrators' awards. Council Compl., ¶ 56; IUOE Compl., ¶ 54. RIH has allegedly refused to do so. Council Compl., ¶ 56; IUOE Compl., ¶ 54.

The Council's collective bargaining agreements incorporated by reference the trust agreements of the welfare, pension, apprentice training, and annuity funds. Council Compl., ¶ 57. Following a demand to remedy contractual violations, the funds invoked the contractual arbitration procedure. Council Compl., ¶ 58. An arbitrator conducted an evidentiary hearing on March 30, 2011, and issued an award in favor of the funds on April 4, 2011. Council Compl., ¶ 59, 62. The funds demanded RIH comply with the award, which it has also refused to do. Council Compl., ¶ 63. In sum, RIH is a party to three collective bargaining agreements with Plaintiffs, and four

grievance arbitration awards found that RIH breached its contractual obligations.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the *12(b)(6)* standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has further explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief

7

survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of plaintiff's claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

### III. Discussion

Plaintiffs do not contest that RAC is a cancelled company, and therefore, it is no longer a legal entity. Furthermore, Plaintiffs do not contest that RAC's cancellation voids their Summonses and service. Instead, Plaintiffs rely on section 4212(c) of ERISA, and ask the Court to ignore RAC's cancellation and deem their Summonses and service sufficient. RAC replies in response that Plaintiffs have neither asserted a § 4212(c) violation in their Complaints nor alleged any facts to support such a violation. RAC also contends that Plaintiffs have not alleged sufficiently that the operation of § 4212(c) would permit Plaintiffs to effectuate proper process or service upon RAC.

In general, section 4212(c) provides that when the principal purpose of a transaction is to evade or avoid pension liability, then the court shall determine liability without regard to such transaction. 29 U.S.C. § 1392. *See IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1058 (2d. Cir. 1993) (an asset sale agreement that excluded the acquisition of withdrawal liability raised a strong inference that the sale was "structured to circumvent the mandates of [§ 4212(c)]."); *see*

*also Santa Fe Pacific Corp. v. Central States, Southeast & Southwest Areas Pension Fund*, 22 F.3d 725, 727-30 (7th Cir. 1994) (imposing withdrawal liability for a stock sale structured to avoid ERISA liability); *Bd. of Trustees, Sheet Metal Workers' National Pension Fund v. Illinois Range, Inc.*, 186 F.R.D. 498, 500 (N.D. Ill. 1999) (choosing a stock sale rather than an asset sale could subject defendants to liability under § 4212(c)); *Central States, Southeast and Southwest Areas Pension Fund v. Denny*, 250 F.Supp.2d 948, 954 (N.D. Ill. 2003) (alleging that a parent company denied its subsidiary the resources to meet its debts and that a sale of the subsidiary's stock lacked consideration sufficiently pled that the principal purpose of the transaction was to avoid withdrawal liability). However, the Court need not address the substantive issue of whether Plaintiffs have sufficiently alleged that § 4212(c) voids RAC's cancellation as a limited liability company because Plaintiffs have failed to set forth any allegations in that regard in their Complaints.

Having reviewed the Complaints, Plaintiffs' allegations only relate to assertions of contractual violations and Defendants' failure to satisfy arbitration awards. Only the Council asserts an ERISA violation, but that allegation concerns Defendants' withdrawal liability under § 4201 of ERISA, rather than a § 4212(c) violation. For the first time in their Opposition Brief, Plaintiffs allege that RAC: (1) sold RIH's property without any of its liabilities; (2) deprived RIH of the necessary capital to satisfy these liabilities; (3) quickly provided payment of the sale proceeds; and (4) immediately filed a Certificate of Cancellation. Plaintiffs further allege that in the totality, RAC's conduct intended to evade pension liabilities in violation of § 4212(c) of ERISA. However, none of these assertions is contained in Plaintiffs' Complaints and certainly, Plaintiffs may not amend their Complaints through briefing. *Commonwealth of Pennsylvania, Ex*

*Rel. Leroy S. Zimmerman, v. Pepsico, Inc.*, 836 F.2d 173, 182 (3d Cir. 1988).  Accordingly, the Court finds that without these crucial allegations, service upon RAC, a cancelled company, is insufficient and grants RAC's motion.  However, instead of an outright dismissal, the Court will provide Plaintiffs leave to amend their Complaints consistent with the strictures of this Opinion.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-111 (3d Cir. 2002).  Finally, the Court advises that it does not comment upon the merits of Plaintiffs' proposed amendments; the Court will reserve its decision until that issue is properly before it.

### IV. Conclusion

For the foregoing reasons, RAC's Motion is granted and Plaintiffs' claims against RAC are dismissed without prejudice.  However, Plaintiffs are given leave to amend their Complaints within twenty days from the date of the Order accompanying this Opinion.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: February 14, 2012

10